Travis T. Wallace and Hazel J. Wallace, et al., [1] v. Commissioner. Wallace v. Commissioner
Docket Nos. 39275, 39276, 39277, 39418, 39419, 39420.
United States Tax Court
1953 Tax Ct. Memo LEXIS 5; 12 T.C.M. (CCH) 1462; T.C.M. (RIA) 54015; December 31, 1953
*5 From its organization in 1937 and during the years here in question, Travis T. Wallace and C. O. Hambleton were president and vice-president, respectively, of the Great American Reserve Insurance Company and also its controlling stockholders. In 1946 the directors voted to pay Wallace $25,000 and Hambleton $12,500 in appreciation of their loyalty and devotion. Partial payments of $5,000 to Wallace and of $2,500 to Hambleton of such sums were made in 1946, 1947, and 1948. Held, such payments were additional compensation and not gifts as petitioners reported on their returns. L. E. Elliott, Esq., 2003 Republic Bank Building, Dallas, Tex., for the petitioners. Paul Newton, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax as follows: Docket No.
Year
Amount
39275
1948
$ 1,995.66
39276
1946
830.95
1947
971.30
39277
1946
830.95
1947
971.30
39418
1948
1,412.76
39419
1946
453.36
1947
515.06
39420
1946
453.36
1947
515.06
The issue to be decided is whether payments to Travis T. Wallace and C. O. Hambleton, by the insurance *6 company of which they were the chief officers and large stockholders, were "gifts," as they reported on their returns, or additional compensation and includible in their gross income. In Docket No. 39418, the parties have agreed that a deduction of $773 is to be allowed for a casualty loss. No issue was raised with respect to some adjustments made by respondent in his deficiency notice, and other adjustments have been conceded. These will be considered under a Rule 50 computation. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Travis T. Wallace and Hazel J. Wallace were husband and wife and residents of Dallas, Texas, during the years in question. They filed individual income tax returns on the community-property basis for the years 1946 and 1947 and a joint return for the year 1948 with the collector of internal revenue in that City. C. O. Hambleton and Sallie B. Hambleton were husband and wife and residents of Dallas, Texas, during the years here in question. They filed individual income tax returns on the community-property basis for the years 1946 and 1947 and a joint return for the year 1948 with the *7 collector of internal revenue in that City. Travis T. Wallace (hereinafter referred to as Wallace) and C. O. Hambleton (hereinafter referred to as Hambleton) organized and incorporated the Great American Reserve Insurance Company (hereinafter referred to as the Company) under the laws of the State of Texas on February 8, 1937. Since the date of incorporation and during the years here in question, Wallace was president of the Company and Hambleton the executive vice-president. Each was a member of its board of directors. The Company's original capital was $25,000 represented by 2,500 shares of $10 par value stock; 1,666 2/3 shares of such stock were originally issued to Wallace and 833 1/3 shares to Hambleton. They caused to be transferred to the Company the business of a mutual health and accident insurance company which they had previously been operating. On July 28, 1937, Wallace transferred 616 2/3 shares of stock, and Hambleton transferred 308 1/3 shares to a trustee to sell in order to raise working capital for the Company. The Company's business was unusually profitable. Its capitalization was increased to $100,000 in 1943 and to $250,000 on December 30, 1946. During 1945 *8 and the years here in question, 10,000 shares of the Company's stock were outstanding. Of such shares, Wallace owned 2,704, and Hambleton owned 1,458. At regular annual stockholders' meetings on the following dates and at a special meeting on December 30, 1946, Wallace and Hambleton either owned outright or held proxies to the following number of shares of stock: No. of
Date of Meeting
Shares Voted
3/13/45
6,105
3/12/46
5,910
12/30/46
5,973
3/11/47
6,712
At the request of the Insurance Commissioner of the State of Kansas, and so that the Company might do business in that State, Wallace and Hambleton on March 13, 1945, each executed a release and quitclaim to all right, title, and interest in the shares which they had transferred to a trustee for sale on July 28, 1937. The minutes of the annual stockholders' meeting of the Company held on March 13, 1945, recited the execution of the releases, the Company's acceptance of them, and its thanks to the two men. The minutes of the board of directors' meeting following that of the stockholders on March 13, 1945, contained a similar notation. Following these meetings, several of the directors of the Company expressed *9 the thought that something more should be done to express the Company's appreciation to the two men. The general counsel was informally requested to investigate the possibility of the Company making a gift to the two men. He was asked to report back at the next regular meeting. The minutes of the annual directors' meeting held on March 12, 1946, immediately following the stockholders' meeting record the following resolution: "Upon motion of C. J. Watts, duly seconded by Lee E. Davis, and unanimously adopted, it was "RESOLVED: That the Great American Reserve Insurance Company, in appreciation of the loyalty and devotion of Travis T. Wallace and C. O. Hambleton to the welfare of this company, and its employees, over and beyond the call of duty, and as an expression of good will, esteem and kind feeling toward them, said corporation hereby sets aside out of its surplus the sum of $37,500.00 as a gift of $25,000.00 to Travis T. Wallace and $12,500.00 to C. O. Hambleton; and "BE IT FURTHER RESOLVED that in order not to unduly tax the surplus of said corporation at this time, said amounts be delivered to donees, one-fifth to each at this time, and one-fifth thereof one, two, three *10 and four years hereafter, and "BE IT FURTHER RESOLVED that the Board of Directors of this corporation may suspend delivery in any year that, in their opinion, the surplus of the corporation would be unduly diminished." A stockholders' meeting held on March 11, 1947, ratified all acts of the officers and directors for the preceding year and adopted them as the acts and deeds of the Company. Pursuant to the resolution of the board of directors of March 12, 1946, the Company during each of the calendar years 1946, 1947, and 1948 paid $5,000 to Wallace and $2,500 to Hambleton. For each of those years, the Company filed Federal income tax returns on Form 1120-L, as required by the Code for life insurance companies. Neither the annual payments to Wallace and Hambleton of $5,000 and $2,500 respectively, nor the regular salaries paid to them were used as any part of the deductions on the Company's returns in such years. The annual statement of the Company to the Board of Insurance Commissioners for the State of Texas for the years 1947 and 1948 lists under the heading of "Disbursements", "Gifts to Employees" in the amount of $7,500. On their returns for each of the years in question, *11 Wallace and Hambleton reported the receipts of the payments from the Company as a gift. In his notices of deficiency, the respondent determined that such payments were additional compensation. The payments of $5,000 to Wallace and of $2,500 to Hambleton during the years here in question were additional compensation. Opinion RICE, Judge: The petitioners and the respondent agree that whether the payments with which we are here concerned were gifts or additional compensation is a question of fact. ; . And that fact depends upon the intention of the donor and the donee, determined by an examination of all of the circumstances surrounding the transaction. (C.A. 2, 1932). The intention of the donor is of particular importance. ; This record discloses that Wallace and Hambleton were the original incorporators of the insurance Company, and then owned all of its outstanding shares of stock. Later they donated a portion of their shares to a *12 trustee to be sold to raise working capital for the business. In 1945, at the request of the Insurance Commissioner of the State of Kansas, they released and quitclaimed to the Company all "right, title and interest, legal and equitable," in such shares, which they had or to which they might be entitled, so that it might do business in that State. The original trust agreement is not before us, but we assume that the releases which the two men executed were only to comply with a technical provision of Kansas law and that they, in fact, had no claims against the Company. Both at a stockholders' meeting and at a directors' meeting on March 13, 1945, the Company accepted and thanked Wallace and Hamb ses. Some directors thought that the Company's appreciation should be expressed by a material gift, and asked the general counsel to investigate and report at the next meeting if it would be legally possible for the Company to make such a gift. At a meeting on March 12, 1946, the directors unanimously adopted a resolution providing for the payment out of surplus of the sums here in question "in appreciation of the loyalty and devotion" of the two men "to the welfare of [the] company, and *13 its employees, over and beyond the call of duty, and as an expression of good will, esteem and kind feeling toward them." Petitioners contend that these facts clearly establish the Company's intention to make a gift from its surplus to Wallace and Hambleton. Alone, they are persuasive argument that such was the case. But they are not all of the circumstances surrounding this transaction. "The repeated reference to the payment as a 'gift' does not make it one." . Nor, does the fact that it was so treated by the donor. (C.A. 5, 1943). "* * * it is not true that because a payment may not have been taken as a deduction by the payer that it cannot be taxed as income to the recipient." (C.A. 5, 1933). The presumption that so-called gifts were, in reality, additional compensation is particularly strong where the employer-employee relationship exists. ; (C.A. 6, 1942), certiorari denied . *14 Wallace was the president and Hambleton the executive vicepresident of the Company. At the stockholders' meeting on March 13, 1945, they together held, through outright ownership and by proxies, voting control over 61.05 per cent of the outstanding shares of the Company's stock. At the meeting on March 12, 1946, they controlled 59.1 per cent of the outstanding shares; at the meeting on December 30, 1946, 59.73 per cent; at the meeting on March 11, 1947, 67.12 per cent. They both were members of the Company's board of directors. If an employer-employee relationship creates a strong presumption that "gifts", in name, are not so in fact, certainly the strength of that presumption is greater when the employee controls the employer. See (C.A. 2, 1952), affirming our Memorandum Opinion in Docket No. 24281 entered March 19, 1951 [; and (C.A. 2, 1946), affirming our Memorandum Opinion in Docket No. 3045 entered January 23, 1945 [. The Company's original capitalization of $25,000 had been increased to $250,000 by December 30, 1946. Its *15 business had been an unusually profitable operation. Unquestionably, that success was due in large measure to Wallace and Hambleton, the original incorporators. Certainly, it is not unreasonable to expect them to be generously rewarded for their efforts in years of abundant prosperity. We note, also, the manner in which the so-called "gift" was to be paid to them - out of surplus, true, but over a 5-year period and subject to suspension altogether if the directors felt that the Company's surplus would be unduly diminished in some year by such payments. We think a reasonable inference to be drawn from this arrangement is that it was contingent compensation, dependent on future high-level earnings. Suffice it to say that the whole record before us establishes to our satisfaction that the payments in question were, in fact, additional compensation to the principal owners of the Company, and not a "gift". Decision will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: ↩
Docket
Petitioners
Nos.
Hazel J. Wallace
39276
Travis T. Wallace
39277
C. O. Hambleton and Sallie B. Hambleton
39418
C. O. Hambleton
39419
Sallie B. Hambleton
39420